# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| BRADY KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:04CV1672CDP/MLM |
| | ) | |
| DON ROPER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court pursuant to the Petition for Writ of Habeas Corpus filed by Petitioner Brady King ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 2. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc.8. Petitioner filed a Traverse. Doc. 13. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 7.

## I.
## BACKGROUND

Petitioner was charged by Substitute Information in Lieu of Indictment as follows: Count I, the class A felony of assault in the first degree in that on December 15, 1997, Petitioner knowingly caused serious physical injury to Darryl Harris by shooting him; Count II, the felony of armed criminal action in that Petitioner committed the felony of assault first degree charged in Count I by, with and through the use, assistance and aid of a deadly weapon; Count III, the class A felony of assault in the first degree, in that on December 15, 1997, Petitioner knowingly caused serious physical injury to Presha Pickett by shooting her; Count IV, the felony of armed criminal action in that Petitioner committed the felony of assault in the first degree charged in Count III by with and through the use

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

assistance and aid of a deadly weapon; Count V, the class B felony of assault in the first degree in that on December 15, 1997, Petitioner attempted to kill or cause serious physical injury to Stan Taylor by pointing a loaded gun at him and pulling the trigger; Count VI, the felony of armed criminal action in that Petitioner committed the felony of assault in the first degree charged in Count V by, with and through the use, assistance and aid of a deadly weapon; Count VII, the class A felony of robbery in the first degree in that on December 15, 1997, Petitioner forcibly stole U.S. currency in the possession of Presha Pickett and in the course thereof displayed what appeared to be a deadly weapon; Count VIII, the felony of armed criminal action in that on December 15, 1997, Petitioner committed the felony of robbery first degree charged in Count VII by, with and through the use, assistance and aid of a deadly weapon; and Count IX, the class C felony of stealing, in that on December 15, 1997, Petitioner appropriated a motor vehicle which was in the possession of Stan Taylor without the consent of Stan Taylor and with the purpose to deprive Stan Taylor thereof. Petitioner was charged as a prior and as a persistent offender in that on March 25, 1980, he pleaded guilty to the felony of burglary first degree and that on March 25, 1980, he pleaded guilty to forcible rape and burglary first degree.  Resp. Ex. 2 at 16-19.

Petitioner was not found guilty of Count IX.   Petitioner was found guilty of all other counts and was sentenced to concurrent sentences of life (Count I), thirty years (Counts II, IV, VII, and VIII), and fifteen years (Counts V and VI). Petitioner was sentenced to a sentence of thirty years for Count III to be served consecutive to the time for Counts I and II. Resp. Ex. 2 at 79-84.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

---

[1]      In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)), cert. denied, 541 U.S. 996 (2004).  Explicit and implicit findings by state trial and appellate courts are presumed to be correct. See Rushen v. Spain, 464

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The state offered evidence of three eyewitnesses to support a finding that on December 15, 1997: Defendant was present in the home of Presha Pickett and Stan Taylor when he shot Darryl Harris, their landlord, in the head; he attempted to shoot Stan Taylor but the gun misfired; and he took money, car keys and subsequently an automobile belonging to Stan Taylor. Presha Picket, Stan Taylor and Cropell McLemore, Presha's eleven-year-old son, witnesses some or all of these acts. These eyewitnesses testified. Defendant offered testimony of two police officers. One testified as to police procedure in investigating the shootings, particularly, regarding photographs at the scene and bullets. The other testified about an interview with Stan Taylor in which Taylor said he saw defendant: shoot Darryl Harris, the landlord, and Presha Pickett; attempt to shoot him; and take money and car keys. Stan Taylor's testimony at trial would support a finding that he saw defendant shoot Darryl Harris and attempt to shoot him, but that he did not see the commission of the other crimes.

Resp. Ex. 5 at 2.

On May 24, 1999, Petitioner filed a direct appeal in which he alleged: (1) the trial court erred in sustaining the State's motion to prohibit defense counsel from cross-examining the State's witnesses about their financial motive to assault and rob Darryl Harris, and (2) the trial court erred in sustaining the State's objection to defense counsel's attempt to introduce evidence directly connecting Presha Pickett and Stanley Taylor to the crimes of assault and robbery against Darryl Harris. Resp. Ex. 3 at 11-12. By Order dated October 12, 1999, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. 5. On May 17, 2000, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. 7 at 92-102. Counsel was appointed and filed a First

U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence which the motion court denied. Resp. Ex. 7 at 125-36, 139-56. On June 2, 2003, Petitioner filed an appeal of the decision of the motion court in which he alleged that he received ineffective assistance of trial counsel because trial counsel did not allow him to testify. Resp. Ex. 8 at 8. By Order dated January 27, 2004, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. 10.

On Petitioner filed his § 2254 petition in which he raises the following issues:

**(1)** Petitioner received ineffective assistance of counsel because:

    **(a)** trial counsel prevented Petitioner from testifying;
    **(b)** trial counsel failed to investigate and call Wendy Eastwood and "Trina" as alibi witnesses;
    **(c)** trial counsel failed to ensure Petitioner was present during jury selection;

**(2)** The trial court erred in limiting cross-examination of the State's witnesses concerning the alleged financial interest of two witnesses in robbing the victim;

**(3)** The trial court erred in sustaining the State's objection to Petitioner's attempt to introduce extrinsic evidence regarding the State's witnesses' financial situation at the time of the assault and robbery of Darryl Harris.

Doc. 2.

## II.
## LEGAL FRAMEWORK APPLICABLE TO DEFAULT, EXHAUSTION AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice); Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default. In Reed v. Ross, 468 U.S. 1 (1984), "the Supreme Court recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." McKinnon v. Lockhart, 921 F.2d 830, 833 (8th Cir. 1990) (citing Reed, 468 U.S. at 16). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar.  Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court.  Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988).  "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim."  Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review."  Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court."  The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court.  Id. at 405.

In Duncan v Walker, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-19 (1982)). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'"  Duncan, 533 U.S. at 179 (citing Rose, 455

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." (citing Rose, 455 U.S. at 515-516; Darr, 339 U.S. at 204). The Court in Duncan further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. 533 U.S. at 180. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Petitioner in the matter under consideration raised the issues which he presents in his § 2254 Petition in the State appellate court with the exception of the ineffective assistance of counsel claims made in Grounds 1(b) and (c). In the appeal of his Rule 29.15 motion the only allegation of ineffective assistance of counsel made by Petitioner was that his trial counsel was ineffective for not allowing Petitioner to testify. He did not allege, as he does in Ground 1(b), that counsel was ineffective for failing to call witnesses or, as he alleges in Ground 1(c), that counsel was ineffective for failing to ensure Petitioner was present during jury selection. The Eighth Circuit holds that a habeas petitioner procedurally defaults claims when the legal or factual theories involving ineffective assistance of counsel claims raised by the petitioner in state court differed from the legal or factual theories involving ineffective assistance of counsel claims the petitioner attempts to raise in federal

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

court. See Miller v. Kemna, 207 F.3d 1096, 1097 (8th Cir. 2000) ("To preserve a claim for federal habeas review, a petitioner must raise both the factual and legal basis for each ineffectiveness of counsel claim in the state courts.") (citing Flieger v. Delo, 16 F.3d 878, 884-85 (8th Cir. 1994)) (per curiam). Because Petitioner did not present the ineffective assistance of counsel issues raised in Grounds 1(b)-(c) to the State appellate court, this court finds that he has procedurally defaulted these claims. Petitioner has not suggested cause and/or prejudice to excuse his procedural default of these claims. As such, the court finds that Petitioner's Grounds 1(b) and (c) should be dismissed.

The court further finds that Petitioner has exhausted his State remedies and has not procedurally defaulted Grounds 1(a), 2 and 3. Additionally, he has timely filed his § 2254 Petition.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 363 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are  materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent."  529 U.S. at 406.  See also  Price v. Vincent, 538 U.S. 634, 640 (2003).  It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme]Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. Williams, 529 U.S. at 413. See also Perry v. Johnson, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in Perry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 123 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## DISCUSSION

**A. Petitioner's Ineffective Assistance of Counsel Claim:**

**Ground 1(a) - Petitioner received ineffective assistance of counsel because trial counsel prevented him from testifying:**

In support of Ground 1(a) Petitioner argues that he had a constitutionally protected right to testify and that it was not reasonable trial strategy for his counsel not to call him to testify in his own behalf. He further contends that his counsel "rested in order to cut Petitioner off from testifying despite an unequivocal expression of a desire to do so." Doc. 13. Petitioner also states that

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

"Petitioner had already been warned by Judge Wilson that he would be removed if he acted out in any way [be]cause (he) Petitioner seemed a little animated or churned up. ... This came after Petitioner was order[ed] in leg restrain[t]s after counsel fabricated a false and misleading conversation to Judge Wilson he had with Petitioner about him testifying in a last ditch effort to deter Petitioner from testifying." Doc. 13.

Upon addressing the issue of Petitioner's Ground 1 the Missouri appellate court first held that in order to establish that he was denied effective assistance of counsel a criminal defendant must show that: "1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonable competent attorney; and 2) movant's defense was prejudiced by his counsel's poor performance." Resp. Ex. 10 at 3 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Hall, 982 S.W.2d 675 (Mo. 1998) (en banc)). The Missouri appellate court further held:

> The decision to testify solely rests with the defendant. Rousan v. State, 48 S.W.3d 576, 585 (Mo. banc 2001). A defense attorney's refusal to allow a defendant to testify contrary to his wishes constitutes ineffective assistance. Brown v. State, 882 S.W.2d 154, 156 (Mo. App. 1994). But advice from counsel not to testify is not deemed ineffective assistance if it might be considered sound trial strategy. Rousan, 48 S.W.3d at 585.

> The only witnesses at the evidentiary hearing were movant and trial counsel. Both testified at the hearing that trial counsel informed movant he had the right to testify at trial, but advised movant against it. Both agreed that trial counsel explained to movant that if he testified, the state would then be able to cross-examine him with evidence of his prior convictions for forcible rape, burglary, robbery, and stealing.

> However, movant testified after receiving this advice he insisted on testifying, but trial counsel did not call him to testify or ask him if he wanted to testify. On cross-examination movant at one point admitted that counsel never told him he could not testify, but later testified that counsel said movant "wasn't going to testify."

> Movant's trial counsel, on the other hand, testified that in all of his trials he followed a common practice in handling the question of whether or not a client will testify. He advises the client that the decision needed to be made before voir dire because it affects the questions he would ask on voir dire. He informs every client that he or she has a right to testify and whether or not to testify is his or her decision. In movant's case he testified that he advised movant "he had a right to testify, and that

if he did testify the prior convictions would be brought out before the jury and that would be his decision whether [or] not to testify." Trial counsel further testified:

> Q: Did you at any time tell him that he could not testify?
>
> A: I don't have any recollection of telling [Movant] he can not testify or him telling me I want to testify and me saying you will not be doing that.
>
> Q. To your recollection in the 35 trials, 35 or 40 trials you had, have you ever told somebody he can not testify?
>
> A: No.
>
> In addition, trial counsel testified that the voir dire transcript indicated to him that movant had made a pretrial decision not to testify because he asked the venire panel whether they would be prejudiced against a defendant who failed to testify, but he did not ask whether the panel would discount the testimony of a defendant with prior convictions.
>
> The motion court found movant incredible and trial counsel's testimony credible. We defer to the motion court's assessment of credibility. State v. Simmons, 955 S.W.2d 752, 773 (Mo. banc 1997); Rousan, 48 S.W.3d at 585. In addition, defense counsel's advice against testifying constituted reasonable trial strategy and was not ineffective assistance. Haslip v. State, 717 S.W.2d 533, 538 (Mo. App. 1986). This point is denied.

Resp. Ex. 10 at 3-4.

Pursuant to Williams, the court will consider federal law applicable to the issue raised in Petitioner's Ground 1(a). Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> [P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Supreme Court has articulated an exception to the rule articulated in Strickland that to prevail on an ineffective assistance of counsel claim a habeas petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mickens v. Taylor, 535 U.S. 162, 166 (2002) (citing Strickland, 466 U.S. at 694). The Court held in Mickens that:

> We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case- by-case inquiry is unnecessary. See Cronic, supra, at 658-659, 104 S.Ct. 2039; see also Geders v. United States, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Gideon v. Wainwright, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. Cronic, supra, at 659, n. 26, 104 S.Ct. 2039.

The Eighth Circuit holds that it is "primarily the responsibility of defense counsel to advise [a] defendant of his right to testify and thereby to ensure that the right is protected." As such, "the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel." Hines v. United States, 282 F.3d 1002, 1004 (8th Cir.2002) (citing United States v. Teague, 953 F.2d 1525, 1534 (11th Cir.1992)). Additionally, the Eighth Circuit has held:

> A criminal defendant has a constitutional right to testify in his or her own defense. Rock v. Arkansas, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir.1987). This right is derived from the Fourteenth Amendment's due process clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's prohibition on compelled testimony. Rock, 483 U.S. at 51-53, 107 S.Ct. 2704. "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right." Bernloehr, 833 F.2d at 751. A defendant's waiver of this right must be made knowingly and voluntarily. Id. We have previously held that a knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify. Id. at 751- 52. We stressed that under such

circumstances the defendant must act "affirmatively" rather than apparently "acquiesc[ing] in his counsel's advice that he not testify, and then later claim[ing] that his will to testify was overcome." Id. (internal quotation omitted).

Frey v. Schuetzle, 151 F.3d 893, 897-98 (8th Cir.1998)

In regard to a finding by a state court that a habeas petitioner waived his right to testify in his own behalf after being advised by counsel of his right to do so and after being advised by counsel not to testify, the Eighth Circuit further held in Frey that where these findings are clearly supported by the record, a federal court will not "second guess" such findings pursuant to a federal habeas petition. See id. at 898.

First, in the matter under consideration, the State appellate court found that the standard set forth in Strickland for a determination of whether a criminal defendant received ineffective assistance of counsel was applicable to Petitioner. Additionally, the motion court credited the testimony of Petitioner's counsel that he advised Petitioner of his right to testify, that he advised Petitioner of the possible consequences of Petitioner's testifying, and that Petitioner chose not to testify. The Missouri appellate court deferred to these factual findings of the motion court. Moreover, the Missouri appellate court concluded that the advice which Petitioner's counsel gave him was reasonable trial strategy and that it, therefore, could not be ineffective assistance of counsel. As such, this court finds that the decision of the Missouri appellate court in regard to the issue raised by Petitioner in Ground 1(a) is not contrary to federal law and is a reasonable application of federal law. See Strickland, 466 U.S. at 687; Frey, 151 F.3d 897-98. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that the issue raised in Petitioner's Ground 1(a) is without merit and that it should be dismissed.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**B.** **Petitioner's Claims Relating to Cross-Examination:**

**Ground 2 - The trial court erred in limiting cross-examination of the State's witnesses concerning the alleged financial interest of two witnesses in robbing the victim, and**

**Ground 3- The trial court erred in sustaining the State's objection to Petitioner's attempt to introduce extrinsic evidence regarding the State's witnesses' financial situation at the time of the assault and robbery of Darryl Harris**.

In Ground 2 Petitioner argues that the trial court erred in limiting cross-examination of two of the State's witnesses and by not letting Petitioner allege that the witnesses, who were victims, had financial difficulties and, therefore, may have committed the robbery of the other victim themselves.[2] In support of Ground 2 Petitioner further argues that under Missouri law it is proper cross-examination of the prosecution's witnesses to inquire into the motive of the witnesses; that a defendant's constitutional rights under the confrontation clause are violated when he is prevented from conducting such in cross-examination; and that in his case defense counsel was prohibited from engaging in appropriate cross-examination to show bias of the prosecution witnesses. Petitioner further contends that the testimony of Cropell McLemore was internally contradictory and inconsistent with what occurred and that Stanley Taylor and Presha Pickett gave inconsistent statements and had a motive to lie. In support of Ground 3, Petitioner argues that the trial court excluded relevant evidence which was exculpatory and critical to his defense. Doc. 12.

---

[2] In Ground 2 Petitioner contends that there were *two* witnesses whom his counsel was not permitted to cross-examine. In his Traverse in support of Ground 2, however, he states that the testimony of Cropell McLemore was the least credible of the State's witnesses and the testimony at trial of Presha Pickett and Stanley Taylor was inconsistent with their statements to police and their deposition testimony. Doc. 13. Petitioner did not allege before the Missouri appellate court that his constitutional rights were violated because his counsel was not permitted to cross-examine Cropell McLemore. Thus, to the extent that Petitioner intends to allege in Ground 2 that his constitutional rights were violated in this regard, the court finds that such a claim is procedurally defaulted and that Petitioner has not stated cause and/or prejudice to excuse this default. See Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Upon addressing the issue raised in Petitioner's Ground 2 and Ground 3, the Missouri appellate court held as follows:

Defendant argues on appeal that the court abused its discretion: (1) in sustaining a motion to limit defense cross-examination of the state's witnesses about their financial motive to assault and rob Darryl Harris; and (2) in sustaining the State's objection to defense counsel's attempt to introduce evidence which would support a finding that Presha Pickett and Stan Taylor were connected to the crimes of assault and robbery of Darryl Harris. The two points are related. Defendant argued that in each event, the testimony which the court excluded would have offered the jury an opportunity to find that the testimony of Presha Pickett and Stan Taylor was untruthful and would have raised an inference that they, rather than defendant, were guilty of the charged crimes. Defendant wanted to offer evidence that Presha Pickett and Stan Taylor were in financial difficulty and that their participation in the commission of some crime against their landlord was motivated by their financial problem. The state argued defendant was not entitled to evidence that Presha Pickett and Stan Taylor were involved in some type of a "set up" because it was irrelevant and would merely confuse the jury in the absence of independent evidence that they, not defendant, committed some crime. The trial court sustained the motion to exclude and an objection because there was no corobration that either of the witnesses was involved in criminal conduct.

We conclude the trial court did not err and defendant was not prejudiced by the rulings. First, defendant's theory was wholly unrelated to the eyewitness testimony of Cropell McLemore. Cropell's testimony was sufficient to support the verdicts. It would also support a finding that the involvement of others, if true, would not be a defense for defendant.

Second, defendant made no offer of proof to support a finding that the excluded testimony would be relevant and would support finding the testimony of Presha Pickett and Stan Taylor was not credible or probative. In order to preserve this point, defendant was obligated to make an offer of proof to show its materiality and relevancy. State v. Chaney, 967 S.W.2d 47, 55 (Mo. banc 1998), cert. denied, 119 S.Ct. 551 (1998). We have no record from which to determine whether the exclusion was erroneous and prejudicial. State v. Brosseit, 958 S.W.2d 615, 617-18 (Mo. App. W.D. 1998).

Third, generally, evidence that another person had an opportunity or motive for committing crimes which the state charged against defendant is not admissible unless there is proof that the other person committed some act directly connecting him or her with the charged crime. State v. Umfrees, 433 S.W.2d 284,l 287 (Mo. banc 1968). It must be evidence which would support a finding that someone other than defendant was guilty of the charged crime. Id. at 287-88. If the court had overruled the state's motion and the state's objection, the nature of the testimony which would have resulted was speculative. It is unclear that the proposed testimony

19

would have offered a defense that someone other than defendant committed any of the charged crimes. At most, there may have been evidence: (1) that Presha Pickett and Stan Taylor were having financial problems; and (2) they acted together with defendant in committing the crimes. It would not represent evidence from which the jury could find that they, not defendant, committed the charged crimes. The excluded evidence would not have provided a defense for defendant, particularly in the face of eyewitness testimony that defendant committed the crimes from a witness who was not connected to the financial issue.

The trial court has broad discretion to admit or exclude evidence and we will reverse only upon a clear showing of abuse. State v. Chaney, 962 S.W.2d at 55. Bias of a witness is "always relevant as discrediting the witness and affecting the weight of [the witnesses'] testimony." Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Potential bias of a witness is never a collateral issue. State v. Lampley, 859 S.W.2d 909, 911 (Mo. App. E.D. 1993). However, in the present case there was no discernable prejudice which resulted from either ruling. Accordingly, we find no abuse of discretion in a case where it is unclear that the testimony would have been any benefit to the defendant or any detriment to the prosecution.

Resp. Ex. 5 at 2-4.

Pursuant to Williams, the court will consider federal law applicable to the issue raised in Petitioner's Grounds 2 and 3. In regard to Petitioner's claim that he was denied the right to confront the witnesses who testified against him, in Delaware v. Van Arsdall, 475 U.S. 675, 678-79 (1986), the United States Supreme Court held as follows:

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), "means more than being allowed to confront the witness physically." Davis v. Alaska, 415 U.S., at 315, 94 S.Ct., at 1110. Indeed, " '[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' " Id., at 315-316, 94 S.Ct., at 1110 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original). Of particular relevance here, "[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Davis, supra, at 316-317, 94 S.Ct., at 1110 (citing Greene v. McElroy, 360 U.S. 474, 496 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam ).

Indeed, under federal law "[t]he bias of a witness is always relevant." United States v. Caldwell, 88 F.3d 522, 525 (8th Cir. 1996). See also Davis v. Alaska, 415 U.S. 308, 316 (1974) ("A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" (quoting 3A J. Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970)). As stated above, however, a trial court is granted wide latitude to limit cross-examination of witnesses to prevent confusion and prejudice. Van Arsdall, 475 U.S. 675, 678-80

Additionally, even it is established that a defendant's rights secured by the Confrontation Clause of the Sixth Amendment are violated, such error may be harmless "in the context of the trial as a whole." Caldwell, 88 F.3d at 524 (citing Van Arsdall, 475 U.S. at 678-79). In order to determine if such error is harmless under federal law a reviewing court must "consider multiple factors, including the importance of [the excluded] testimony to the overall case against [the defendant]; whether it was cumulative, the presence of corroborating or contradicting evidence, the extent of cross-examination otherwise permitted, and the overall strength of the government's case." Id.

Also, the United States Supreme Court held in Estelle v. McGuire that "federal habeas corpus relief does not lie for errors of state law" and that "it is not province of a federal habeas court to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984)).  The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )).  Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition.  Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Indeed, questions concerning the admissibility of evidence are reviewable in federal habeas corpus proceedings only when the alleged error resulted in a trial so fundamentally unfair as to deny the petitioner due process of the law. Evans v. Luebbers,371 F3d 438, 443 (8th Cir. 2004) (holding that federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights") (citing Estelle, 502 U.S. at 68),  cert. denied, 125 S.Ct. 902 (Jan. 10, 2005); Rainer v. Dep't of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990).  See also  Sweet  v. Delo, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so `gross'... `conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984)  (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

was so prejudicial as to deny due process). Additionally, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." United States v. Macklin, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir.1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.1996)).

Upon considering the issues raised by Petitioner in Ground 2 the Missouri appellate court considered that bias of a witness is always relevant to a determination of a witnesses credibility but that in the matter under consideration there was no prejudice from excluding the cross-examination of Pickett and Taylor; their testimony would not have established Petitioner's innocence considering the testimony of Cropell McLemore whose financial status Petitioner did not intend to place at issue. These findings of the State court are not contrary to federal law and are a reasonable interpretation of federal law. See Van Arsdall, 475 U.S. at 678-79; Davis, 415 U.S. at 316; Caldwell, 88 F.3d at 524. Additionally, in regard to the issue raised in Petitioner's Ground 2 the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

Upon concluding that the trial court did not err in refusing to permit Petitioner to introduce evidence regarding the motives of Pickett and Taylor, the State appellate court considered the State's argument that the testimony which Petitioner sought to introduce was irrelevant and would confuse the jury and also that the evidence which Petitioner sought to introduce was speculative. The State appellate court further considered that pursuant to Missouri law evidence that another person had the opportunity or motive to commit the crimes for which a defendant is charged is not admissible unless there is proof connecting the other person with the charge crimes. As stated above, the Missouri appellate court concluded that even if the excluded cross-examination was permitted it would not

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

have been exculpatory of Petitioner.  As such, the court suggested that Petitioner was not prejudiced. Where there is no prejudice there can be no denial of due process resulting from the exclusion of evidence.  See Rainer, 914 F.2d at 1072; Sweet, 125 F.3d at 1157-58; Turner, 845 F.2d at 169; Mercer, 844 F.2d at 587; Manning-El, 738 F.2d at 322.  The court finds, therefore, that the decision of the Missouri appellate court that Petitioner was not denied due process as a result of the trial court's sustaining the State's objection to defense counsel's attempt to introduce evidence to suggest that Pickett and Taylor were connected to the assault and robbery of Darryl Harris, as alleged in Petitioner's Ground 3,  is not contrary to federal law and is a reasonable interpretation of federal law. Additionally, in regard to the issue raised in Petitioner's Ground 3 the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  As such, the court finds that Petitioner's Grounds 2 and 3 are without merit and that they should be dismissed.

## CONCLUSION

For the reasons stated above, the court finds that Petitioner has procedurally defaulted the issues raised in Grounds 1(b) and (c) and that Petitioner's Grounds 1(a), 2, and 3 are without merit. As such, Petitioner's § 2254 petition for habeas relief should be dismissed in its entirety.  The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude.  Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should  not be granted a certificate of appealability in this matter.  See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; [2]

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.3d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler

MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  24th  day of  June, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com